# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY SIMONTON, JR.,** | : | **CIVIL ACTION NO. 1:09-CV-0233** |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **FRANKLIN TENNIS, et al.,** | : | |
| Defendants | : | |

# **MEMORANDUM**

Plaintiff Terry Simonton, Jr. ("Simonton"), a Pennsylvania state inmate who, at all times relevant, was incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview") in Bellefonte, Pennsylvania, commenced this civil rights action on February 5, 2009. (Doc. 1.) Presently pending is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed on behalf of the following remaining Pennsylvania Department of Corrections ("DOC") officials and employees stationed at SCI-Rockview: Franklin Tennis, Superintendent; Brian Thompson and Robert Marsh, Deputy Superintendents; Sergeant Bryan[1]; and Lieutenant Graham. (Doc. 28.) For the reasons set forth below the motion will be granted.

---

[1] This defendant is referred to in the complaint as "Sgt. Brian." (Doc. 1.)

**I.  Statement of Material Facts**

On April 12, 2008, defendants Sergeant Bryan and Lieutenant Graham were working the Unit Desk in D Building at SCI-Rockview, which houses inmates in general population. (Doc. 29, at ¶ 2.) On that day, an inmate by the name of Seamon had been denied a visit by the officers working the desk in the visiting room. (Doc. 29, at ¶ 3; Doc. 60, at ¶¶ 2-3.) When Seamon returned to D Building, he discussed the denial of his visit with defendant Graham, who explained to him that there was a problem with the visitor. (Doc. 29, at ¶ 3; Doc. 30-2, at ¶ 5.) During his deposition, Simonton stated that it was evident that Seamon was upset. (Doc. 30-4, at 6.) He overheard some of the conversation between Seamon and Graham, but could not hear everything that was being said and "didn't pay much attention to all of the commotion and when [he] went to turn around, [he] was on the ground then." (Doc. 30-4, at 6.) He never met Seamon before that day, did know who he was, and was not afraid of him. (Doc. 30-4, at 8-9.) He later learned of his name through the grievance procedure. (Doc. 30-4, at 6.) He states in his statement of material facts that rather than help or explain to Seamon why the visitor was sent away, defendants Bryan and Graham antagonized and angered him "to the point of assault." (Doc. 60, at ¶¶ 1-2.) However, there is no support for this statement in the record. Defendants contend that Seamon became enraged and without warning, turned and punched Simonton (who was waiting in line to go to his prison job) in the face. (Doc. 29, at ¶ 4.) The attack came without forewarning and as a complete surprise to both Simonton and Defendants. (Doc. 29, at ¶ 10.) Prior to this incident,

2

there was no indication that Seamon would attack another inmate. (Doc. 30-2, at ¶ 12; Doc. 30-3, at ¶ 12.) It is undisputed that Tennis, Thompson, and Marsh were not present when the assault occurred. (Doc. 29, at ¶ 11; Doc. 30-4, at 11-12.) Rather, Simonton's dissatisfaction with these defendants emanates from their role in the after-the-fact grievance procedure and investigation.

Simonton was taken to the medical department and pictures were taken of his face. (Doc. 29, ¶ 5; Doc. 60, ¶ 5.) He was examined, provided with ice packs, given Tylenol, and sent back to his cell block. (Doc. 29, ¶ 5; Doc. 60, ¶¶ 5-6.) X-rays taken a few days later revealed that he suffered a broken nose. (Doc. 60, at ¶¶ 7-8.) He was provided an assortment of medications to alleviate his pain. (Doc. 29, at ¶ 6; Doc. 60, at ¶¶ 8-9.) He states that since the attack he suffers from hearing loss and headaches and experiences vision problems. (Doc. 60, at ¶¶ 8-10.)

Seamon was given a misconduct for assault and transferred to another prison. (Doc. 29, at ¶ 8.) The assault was reported to the Pennsylvania State Police and a meeting was arranged between the investigating state trooper and Simonton. (Id. at ¶ 9.) Seamon was criminally prosecuted in state court and Simonton was permitted to testify in the state court proceedings. (Id.)

## II. **Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, the movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

3

Civ. P. 56(a).[2] In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Colwell v. Rite-Aid Corp., 602 F.3d 495, 501 (3d Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

## III. Discussion

In order to prevail on a civil rights claim, a plaintiff must establish that: (1) the alleged wrongful conduct was committed by a person acting under color of state law, and (2) the conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000); Schiazza v. Zoning Hearing Bd., 168 F. Supp.2d 361, 372 (M.D. Pa. 2001).

---

[2]Rule 56 was revised by amendment effective December 1, 2010. The revisions are "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts." Rule 56 advisory committee notes. "The standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Id. The post-2010 Amendment Rule 56 provisions will be applied in the matter *sub judice*, as the Supreme Court has directed that the 2010 Amendments are to be retroactively applied. See Order of the Supreme Court of the United States accompanying Letters from Chief Justice John G. Roberts, Jr., to Speaker of the House Nancy Pelosi and President of the Senate Joseph R. Biden, Jr. (Apr. 28, 2010).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); see Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Such allegations, however, must be made with appropriate particularity. Rode, 845 F.2d at 1207-08. Further, the United States Court of Appeals for the Third Circuit requires a defendant's contemporaneous, personal knowledge and acquiescence, in order to establish personal knowledge. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

A. Conspiracy Claim

Simonton alleges that defendants Tennis, Thompson, and Marsh participated in a cover up of repeated prisoner-on-prisoner assaults at SCI-Rockview. (Doc. 1, at ¶¶ 1-3.) In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The United States Court of Appeals for the Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights, (2) the time and the place of the conduct, and (3)

5

the identity of the officials responsible for the conduct. Oatess v. Sobolevitch, 914 F.2d 428, 432 n.8 (3d Cir. 1990). See also, Colburn v. Upper Darby Twp., 838 F.2d 663 (3d Cir. 1988).

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. See id.; Rose, 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young, 926 F.2d at 1405 n.16.

Simonton offers nothing beyond his conclusory allegations that these defendants participated in a "cover-up." (Doc. 1, at ¶¶ 1-3.) The record is devoid of specific facts which tend to show the time-frame of the alleged conspiracy, that there was a meeting of the minds of these defendants, or some concerted activity took place. In fact, there is no mention of either defendant Thompson or Marsh in Simonton's statement of material facts and no reference to the involvement of these defendants in a conspiracy. Defendants Tennis, Thompson, and Marsh are entitled to summary judgment on the conspiracy claim.

B. Claim of Failure to Investigate Grievances

These same defendants are also entitled to summary judgment to the extent that Simonton attempts to impose liability on them based upon their roles in the grievance process. Prisoners do not have a constitutional right to prison grievance procedures. See, e.g., Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases). Moreover, participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement. See Rode, 845 F.2d at 1208 (mere filing of a grievance is not enough to impute the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Croom v. Wagner, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corrections, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement); Pressley v. Blaine, No. 01-2468, 2006 U.S. Dist. LEXIS 30151, at *17 (W.D. Pa. May 17, 2006) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern." (citing Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983)).

7

C. <u>Failure to Protect Claim</u>

Simonton's Eighth Amendment claim against Tennis, Thompson and Marsh hinges on their roles as supervisory personnel. However, liability cannot be predicated solely on the operation of *respondeat superior*. <u>Rizzo</u>, 423 U.S. 362; <u>Rode v. Dellarciprete</u>, 845 F.2d at 1207. To maintain a claim for supervisory liability, plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995). Simonton fails to establish that these supervising officials personally participated in unconstitutional activity, directed others to violate constitutional rights, or had knowledge of and acquiesced in a subordinate's violations.

Remaining is Simonton's claim that defendants Graham and Bryan failed to protect him from the assault. Defendants do not dispute that Simonton was injured, but assert that there is no evidence that they knew of or were deliberately indifferent to the risk that Seamon might assault Simonton.

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. In the context of prisoner confinement, it is well-established that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Helling v. McKinney</u>, 509 U.S. 25 (1993)).

Not only must prison officials refrain from the use of excessive force against prisoners, see Hudson v. McMillan, 503 U.S. 1, 6-7 (1992), and ensure that prisoners receive adequate food, clothing, and medical care, Farmer, 511 U.S. at 832-33, but they must also "take reasonable measures to guarantee the safety of the inmates" vis-a-vis other inmates, Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see also Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). As the Supreme Court has stated, "[b]eing violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.' " Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

Thus, the Eighth Amendment places upon prison officials a duty to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." Hamilton, 117 F.3d at 746 (quoting Farmer, 511 U.S. at 833). In order for a plaintiff to prove a constitutional violation in a failure-to-protect case, a claimant must demonstrate that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison officials acted with "deliberate indifference to his health and safety." Farmer, 511 U.S. at 834; see also Beers-Capital v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001); Hamilton, 117 F.3d at 746.

   1. *Substantial Risk of Serious Harm*

The court must conduct an objective analysis under the substantial risk prong of the inquiry, see Farmer, 511 U.S. at 834; Hamilton, 117 F.3d at 746, and as such, the inquiry ordinarily will not be satisfied by evidence of a single incident or isolated incidents, see Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). An objectively

9

substantial risk of harm, however, may be "established by much less than proof of a reign of violence and terror." Id. (quoting Shrader v. White, 761 F.2d 975, 978 (4th Cir. 1985)).

Simonton has failed to adduce sufficient evidence that he was incarcerated under conditions posing a substantial risk of serious harm. To the contrary, until the incident in question, there is no indication that he was ever threatened, assaulted, or felt in any danger while incarcerated at SCI-Rockview. He argues that rather than help or explain to Seamon why his visitor was sent away, defendants Bryan and Graham antagonized and angered him "to the point of assault." (Doc. 60, at ¶¶ 1-2.) However, there is no support for this statement in the record. In fact, Simonton specifically states that Seamon was already agitated when he began speaking with defendant Graham and that while he overheard some of their conversation, he could not hear everything. In fact, he admits that he "didn't pay much attention to all of the commotion." (Doc. 30-4, at 6.) The assault by Seamon was unexpected, not just to Simonton, but to prison authorities who had no objective evidence of a risk of harm to Simonton or any other inmate. The evidence clearly shows that the assault of April 12, 2008, was an isolated incident, which is insufficient to establish constitutional liability. See Riley, 777 F.2d at 147 (noting that an isolated incident is insufficient evidence to establish an Eighth Amendment violation); see also Williams v. Brown, Civ. No. 05-796, 2007 WL 2079935, at *3 (D.N.J. July 17, 2007)(finding that an inmate-on-inmate assault was "an isolated

attack" when the aggressor inmate had never been in any fights with other prisoners and had no history of violence within the prison system).

### 2. *Deliberate Indifference*

In cases of prisoner incarceration, Eighth Amendment liability attaches only to the "unnecessary and wanton infliction of pain." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Thus, not only must a prisoner's conditions of incarceration be sufficiently serious, but prison officials must possess a "sufficiently culpable state of mind" in allowing such a condition to persist. Beers-Capital, 256 F.3d at 125. This second prong of the Eighth Amendment inquiry requires the court to analyze whether prison officials were, from a subjective standpoint, deliberately indifferent to an inmate's health or safety. Farmer, 511 U.S. at 834. Specifically, the question is whether an official consciously knew of and disregarded an excessive risk to the prisoner's well being. See Farmer, 511 U.S. at 840-44; Hamilton, 117 F.3d at 747. It is not enough to show that the prison official was "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists." Farmer, 511 U.S. at 837. Rather, the prison official "must also draw the inference." Id. The official's actual knowledge may be proved by circumstantial evidence. Beers-Capital, 256 F.3d at 131.

The record is devoid of evidence that prison officials consciously disregarded a known risk to Simonton's health or safety. The conditions of Simonton's incarceration do not demonstrate a deliberate indifference.

**IV. Conclusion**

Based on the foregoing, defendants' motion for summary judgment (Doc. 28) will be granted. An appropriate order follows.

                                       S/ Christopher C. Conner
                                       CHRISTOPHER C. CONNER
                                       United States District Judge

Dated:        March 16, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY SIMONTON, JR.,** | : | CIVIL ACTION NO. 1:09-CV-0233 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **FRANKLIN TENNIS, et al.,** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 16th day of March, 2011, in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 28) pursuant to FED. R. CIV. P. 56, filed on behalf of defendants Tennis, Thompson, Marsh, Bryan and Graham, is GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendants Tennis, Thompson, Marsh, Bryan and Graham and against plaintiff.

3. The Clerk of Court is further directed to ENTER judgment in favor of defendants Woodring, Rackovan and Williams per this court's order of January 22, 2010 (Doc. 21).

4. The Clerk of Court is directed to CLOSE this case.

5. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge